## IN RE: The matter of certain decisions of the 1988 Dade County Property Appraisal Adjustment Board, Dade County, Florida.

State of Florida, Department of Revenue

June 15, 1990

### OPINION OF THE COURT

J. THOMAS HERNDON, Executive Director, Florida Department of Revenue

Prepared by: Jeff Kielbasa, Ad Valorem Tax Counsel, Office of the General Counsel, Tallahassee, Florida.

### *FINDINGS OF THE DEPARTMENT OF REVENUE*

Pursuant to § 194.036(1), F.S., Joel Robbins, Dade County Property Appraiser, has filed a petition with the Department of Revenue, asserting that there exists a consistent and continuous violation of the

intent of the law and administrative rules of the Department of Revenue by the Dade County Property Appraisal Adjustment Board (PAAB) in its decisions. The original petition of September 28, 1989, was amended by petition October 23, 1989, from the Property Appraiser deleting several assessments from the petition which were found not to be in controversy.

By the provisions of § 194.034 and § 194.036(1)(c), the Department of Revenue, on November 2, 1989, wrote the clerk of the PAAB advising it of the Property Appraiser's assertion of violations of the law by the PAAB and of the PAAB's duties under § 194.034(1)(c) and § 194.036(1)(c) to submit a record including verbatim transcripts and decisions of the PAAB asserted to be in violation of the law. In producing the record and transcripts, the PAAB requested several extensions to prepare the record which were granted by the Department to March 9, 1990. The Department requested an extension to respond to June 15, 1990, which was granted.

The petition asserts three instances of consistent and continuous violations of the law by the PAAB: (1) that, over the objection of the Property Appraiser, the PAAB permitted taxpayers to challenge their personal property assessments, and reduced them notwithstanding the taxpayer's failure to file a return pursuant to the provision of § 193.052 and § 193.061, F.S., and Rule 12D-1.004(3), F.A.C.; (2) that the PAAB, again over the objection of the Property Appraiser, permitted taxpayers to testify and present evidence which was requested from the taxpayers in writing prior to the hearings by the Property Appraiser, but not furnished in advance; and (3) that the above failure to submit requested evidence in advance constitutes a violation of the Property Appraiser's constitutional right of due process of the law.

Upon review of the petition of the Property Appraiser, together with the decisions of the PAAB and the record of its proceedings, the Department of Revenue finds as follows:

### Findings of Fact

The Property Appraiser's petition states that in each of Exhibits 1 through 10, 12 through 28, 30 through 35, 37 through 42, and 44, the PAAB conducted a hearing and reduced the taxpayer's personal property assessments without first requiring the taxpayer to file a return, and that for Exhibits 1 through 10, 13, and 45, the Special Master considered evidentiary material requested by the Property Appraiser in writing on the back of the PAAB form (see Exhibit B attached hereto) to be submitted in advance of the hearing in accor-

194

dance with § 194.034(1)(d), which was not submitted prior to the hearing.

Exhibit #1, Rodriguez-Chomat, Jorge, reveals a reduction in assessed value from the Property Appraiser's estimate of $6,000 to $1,250 for equipment in one of two law offices operated by the taxpayer. The record reflects no return was filed for the equipment in the second office with testimony by the taxpayer that the assessment in the second office was excessive due to the fact that some of the equipment was actually in the first office and was included in the tax return filed for the first office, a separate corporation. The Property Appraiser testified that his office attempted to conduct a field inspection of the office for which no return was filed, but it was locked. The reduction was based on evidence presented for the first time at the hearing.

Exhibit #2, Glorified Caterers, Inc., shows a reduction from $140,500 to $102,500 for a restaurant for which no personal property return was filed. The original assessment was based on a field inspection from an estimate utilizing value of personal property per square foot of buildings for similar establishments. The reduction was based on evidence presented for the first time at the hearing.

Exhibit #3, Gables Panatype, shows a reduction from $3,600 to $2,408. No return was filed. The reduction was based on evidence requested by the Property Appraiser in writing for production prior to the hearing, but presented for the first time at the hearing.

Exhibit #4, Hair Quarters, shows a reduction from $25,198 to $9,000 for beauty shop equipment. No return was filed. The reduction was based on evidence presented for the first time at the hearing. The evidence consisted primarily of an inventory list from a foreclosure sale 11 months after the assessment date. With no return, no statements exist for what property was present on January 1, 1988.

Exhibit #5, Football Sandwich Shop, shows a reduction from $42,500 to $7,550. No return was filed. The $41,500 original assessment was based on a site inspection. The reduction was based on evidence presented for the first time at the hearing.

Exhibit 6, Wong's #2, shows a reduction from $120,000 based on a field inspection from an estimate utilizing value of personal property per square foot of buildings for similar establishments, to $89,810. The reduction was based on evidence presented for the first time at the hearing.

Exhibit #7, Alexander's Dry Cleaning, shows a reduction from $11,037 to $3,500 for a laundry drop-off store. No return was filed.

**195**

The reduction was based on evidence presented for the first time at the hearing.

Exhibit #8, Chick-a-Dee Ranch, Inc., shows a reduction from $114,000 to $54,515. The original assessment was based on a site inspection. No return was filed. The reduction was based on evidence presented for the first time at the hearing, a list of items with depreciated original cost.

Exhibit #9, Angelo's Pizza, shows a reduction from $66,300 on an original assessment based on a field inspection to $13,050. No return was filed. The reduction was based on evidence presented for the first time at the hearing.

Exhibit #10, Lucas Marine Construction Company, shows an original assessment of $89,000 based on a site inspection, reduced to $20,000. No return was filed. The reduction was based on testimony presented for the first time at the hearing, over objection by the Property Appraiser. The record reflects that the reduction was for a loader which was leased by the company.

Exhibit #12, San Lazaro Coffee Shop 2, shows an original assessment of $60,000 based on a field inspection from an estimate utilizing value of personal property per square foot of buildings for similar establishments, reduced to $31,400. No return was filed. The reduction was based on the Special Master's opinion of value based on the field report and additional property not included. The original assessment was based on the square foot content formula.

Exhibit #13, Ambassador Realty Sales, shows an original assessment of $8,000 based on a field inspection, reduced to $2,500. No return was filed. The taxpayer said he never received one in the mail, though he agreed with the Special Master that being in the real estate business, he should recognize that returns are required. The reduction was based on evidence presented for the first time at the hearing.

Exhibit #14, Applestein, Allan H., shows a reduction from an original assessment of $6,000 based on a site inspection to $2,500. No return was filed. The reduction was based on testimony presented at the hearing for the first time, essentially the taxpayer's opinion of replacement cost.

Exhibit #15, Capri Restaurant, shows a reduction from $349,000 to $50,968 for restaurant equipment. No return was filed. An appraisal done by a private appraiser was mailed to the PAAB and not the Property Appraiser. The reduction was based on testimony not submitted to the Property Appraiser prior to the hearing.

■■■■■■■■■■■■■■

Exhibit #16, Canton Village Restaurant, shows a reduction from $61,000 to $33,625. No return was filed (the last year for which a return was filed was 1978). No testimony was presented as to the value other than the assessment, based on a field check, doubled over the prior year, though there was no change in the restaurant.

Exhibit #17, Thai Restaurant, shows an original assessment of $161,000 reduced to $81,000. No return was filed. From the record, the taxpayer sent some documents by certified mail to the PAAB purporting to explain why the returns were not filed, but they were never received by the Property Appraiser. No evidence was presented other than an interview sheet with the Property Appraiser and the taxpayer's assertion that his restaurant equipment was just junk. The reduction was made over objection of the Property Appraiser, that the Board was without jurisdiction because no return was filed. The basis for the reduction is unknown from the record, other than it was based on information delivered to the PAAB by certified mail and the Special Master's dissatisfaction with the Property Appraiser's estimate based on a formula of $40 worth of personal property per square foot of comparable property. The record reveals that the formula was derived from an exhaustive study of restaurant property conducted by the Property Appraiser's office the past year. Apparently, the petition listed the quality and condition of the equipment as being good.

Exhibit #18, Mae & Daves-Benart, Inc., shows a reduction from $71,840 to $8,915. No return was filed, and none since 1985. The assessment was made on the basis of a field report. The basis of the assessment was $30 of personal property value per square foot apparently based on a study by the Property Appraiser's office. The taxpayer attempted to submit documentary evidence at the hearing, but it was apparently not accepted by the Special Master because it had not been submitted in advance. The Special Master's findings recommending the reduction used prior assessments plus $1,000 in additions the taxpayer testified were made.

Exhibit #19, Estrella Cafeteria, shows a reduction from $30,100 to d²6,350. The assessment was based on a field report. No return was filed. The reduction was made using the taxpayer's estimate on the petition with the penalty added.

Exhibit #20, Aly's Cafe, shows a reduction from $37,900 to $19,-150. The assessment was based on a field inspection. No return was filed.

Exhibit #21, Camacho Cigars, Inc., shows a reduction from $59,229 to $44,700. While the record conflicts as to whether a return was filed,

**197**

the Special Master reduced the assessment to the above amount including penalty for failure to file.

Exhibit #22, Americans Bankers Life, shows a reduction from $40,000 to $0. The record reveals that the Special Master determined that the taxpayers were not required to file a return because the property/building fire extinguishers, hoses and an awning, were real estate, not personal property.

Exhibit #23, Pelzner Schwedock, shows a reduction from 4d81,601 to $34,100. No return was filed. The assessment was based on the 1987 return. The record reveals the taxpayer is a law firm which broke up with most of the partners leaving and removing their equipment.

Exhibit #24, White Star Industries, shows a reduction from $43,200 to $32,400. No return was filed. The assessment was based on a field check. The reduction was apparently based, according to the Special Master's findings, on the 1987 assessment.

Exhibit #25, RVR Data Service, Inc., shows a reduction from $104,922 to $10,100. The record reveals a return was filed the day before the hearing. The basis for the reduction was testimony that the computer equipment was obsolete.

Exhibit #26, Little Haiti Restaurant, shows a reduction from $30,000 to $5,250. No return was filed. The reduction was based on prior year assessments with additions testified to.

Exhibit #27, Kelly, Nancy S., shows a reduction from $100,000 to $85,000. No return was filed. The reduction was apparently based on prior year's assessment reduced for depreciation.

Exhibit #28, Ros-Camp, Inc., shows a reduction from $25,000 to $4,875. No return was filed. The assessment was based on a field check and the last return filed, 1978.

Exhibit #30, Ace Vending, shows a reduction from 4d46,221 to $26,250. No return was filed. The taxpayer testified that he sold many of his vending machines. The Special Master's findings show reduction was based on remaining inventory (vending machines) on hand.

Exhibit #31, The Hamlet, shows a reduction from $12,086 to $2,600. No return was filed. The findings show the reduction was based on the taxpayer's estimate at the hearing.

Exhibit #33, Renand, Inc., shows a reduction from $98,000 to d²3,785. No return was filed. The taxpayer did, however, go to the Property Appraiser's office to seek a reduction prior to the hearing. It is unclear from the record whether he was advised at that time of the

198

requirement for a return to contest an assessment. The reduction was based on an appraisal report. The assessment was based on a square footage formula for similar businesses.

Exhibit #34, Hoagy Hut Take Out, Inc., shows a reduction from $45,200 to $5,200. No return was filed. The reduction included penalty for failure to file. The Special Master's findings show the reduction was based on the age and condition of the equipment based on testimony at the hearing.

Exhibit #35, Penalver, M. (Cape Corp.), shows a reduction from $106,000 to $92,812. No return was filed. The reduction was based on the taxpayer's testimony at the hearing and includes the penalty.

Exhibit #37, Cervieri, Jr., John A., shows a reduction from $36,148 to $0. No return was filed. Testimony stated that the pizza parlor went out of business and no equipment was present on January 1, 1988, or if any was, it was abandoned. The building has been re-rented.

Exhibit #38, Signature Gardens, shows a reduction from $2,215,000 to $391,765. A return was presented at the hearing (15 months after its due date). The Special Master refused to hear the petition originally, but took it up in the afternoon session, apparently based on advice of counsel for the PAAB (Transcript Exhibit #38, Volume II, page 21). Testimony at the hearing revealed that the original assessment was based on a square footage contents formula utilized by the Property Appraiser in the absence of an itemized return and that much of the property assessed (catering equipment) was permanently affixed to the buildings and was therefore, real property.

Exhibit #39, Big Bear Enterprises, shows a reduction from $2,213 to $100. No return was filed. Testimony stated that the building was vacant, empty, and the power and water cut off by mid-1988, and set for demolition. On January 1, 1988, it contained only one refrigerator and hot plate in one of its apartments. The assessment was reduced to the Special Master's estimate of the refrigerator and hot plate value.

Exhibit #40, Steelman Caterers, Inc., shows a reduction from $44,000 to $23,000. No return was filed. The basis for the reduction was testimony that the equipment was old.

Exhibit #41, Il Piatto Italiano Restaurant, shows a reduction from $85,080 to $47,500. No return was filed. The reduction was based on the taxpayer's purchase price of $47,500 in February 1988 for the business. No penalty was assessed.

Exhibit #42, Peterman Inn, shows a reduction from $52,800 to $21,523. No return was filed though some information was attached to

the petition. Reduction was based on depreciated cost. Federal tax return information was not produced.

Exhibit #44, Miami Engineering Contractor, shows a reduction from $209,992 to $13,750. No return was filed. The original assessment was based on the 1987 return. Testimony presented was that the company went out of business and most of the equipment was sold prior to January 1, 1988. As to furniture and office supplies, the testimony was that it was included in another corporation's return. However, no documentary evidence was submitted. The reduction was based on the value of one piece of equipment unsold as of January 1, 1988, plus the penalty.

Exhibit #45, Tropic Cafeteria, shows a reduction from $30,200 to $8,900. The reduction was based on evidence requested in writing by the Property Appraiser (on the PAAB petition, Exhibit B) but not furnished prior to the hearing.

### Conclusions of Law

The first assertion requires a decision as to whether the law requires that a personal property tax return, if required, must be filed before a personal property tax assessment can be challenged before the PAAB. In this regard, § 193.052, F.S., provides that returns are required for tangible personal property and further provides that when returns are required, they shall be completed as prescribed by the Department of Revenue.

193.052 Preparation and serving of returns.—

(1) The following returns shall be filed:

(a) Tangible personal property; and

(b) Property specifically required to be returned by other provisions in this title.

(2) No return shall be required for real property the ownership of which is reflected in instruments recorded in the public records of the county in which the property is located, unless otherwise required in this title. . .

\* \* \*

(3) A return for the above types of property shall be filed in each county which is the situs of such property, as set out under § 192.032.

(4) All returns shall be completed by the taxpayer in such a way as to correctly reflect the owner's estimate of the value of property owned or otherwise taxable to him and covered by such return . . .

Additionally, § 193.072 provides that a 25% penalty shall apply for each year no return is filed and failure to file does not in any way relieve a taxpayer from the obligation to pay all taxes assessed.

193.072. Penalties for improper or late filing of returns and for failure to file returns.—

(1) The following penalties shall apply:

(a) For failure to file a return—25 percent of the total tax levied against the property for each year that no return is filed.

\* \* \*

(3) Failure to file a return, or to otherwise properly submit all his property for taxation, shall in no regard relieve any taxpayer of any requirement to pay all taxes assessed against him promptly.

Finally, § 195.027 provides that the rules and regulations of the Department of Revenue shall require a return of tangible personal property with numerous requirements as to the description, location, cost, condition and age of the property. The statute further mandates that the Department's rules *shall* be followed by the Property Appraisal Adjustment Board.

195.027 Rules and regulations.—

(1) The Department of Revenue shall prescribe reasonable rules and regulations for the assessing and collecting of taxes, and such rules and regulations shall be followed by the property appraisers, tax collectors, clerks of the circuit court, and property appraisal adjustment boards.

\* \* \*

(4)(a) The rules and regulations prescribed by the department shall return a return of tangible personal property which shall include:

1. A general identification and description of the property or, when more than one item constitutes a class of similar items, a description of the class.

2. The location of such property.

3. The original cost of such property and, in the case of a class of similar items, the average age.

4. The age of such property and, in the case of similar items, the average age.

5. The condition, including functional and economic depreciation or obsolescence.

201

6. The taxpayer's estimate of fair market value.

As part of Rule 12D-16.002, the tangible personal property return was promulgated in substantially its present form by the Governor and Cabinet sitting as the Department of Revenue in July 1980. It provides that it must be returned to the County Property Appraiser and details requested information concerning personal property. (Exhibit A)

Pursuant to its duty under § 105.027 (above) to prescribe rules to require a return of tangible personal property, the Department promulgated RUle 12D-1.004(3), F.A.C., which provides that "an assessment may not be contested *until* a return, *if required,* is filed by the taxpayer." As indicated, § 193.052(1) and (3), F.S., require the filing of a return for tangible personal property, assuming the property has situs within the county as provide in § 192.032.

In the case *Petrie v Bystrom,* 25 Fla. Supp.2d 6 (Fla. 11th Cir. Ct., 1987), the court dismissed a taxpayer's complaint with prejudice as being barred for want of subject matter jurisdiction for failure to file a personal property tax return. While the case did not concern jurisdiction before the PAAB, it construed the Department's Rule 12D-1.004(3) and supports the Property Appraiser's assertion that it is unlawful to conduct PAAB hearings on personal property assessments without returns being filed.

It should be pointed out that the Department's rule (requiring a return as a condition to challenging an assessment) is not an absolute bar to challenging an assessment before the PAAB. By providing that a challenge to an assessment is prohibited *until* a return, *if required,* is filed, the rule functions as a procedural requirement, permitting a taxpayer to correct his failure to file and invoke the jurisdiction of the PAAB. In this sense it is no more a bar to a hearing than the requirement for filing a petition or paying a filing fee, where required. See § 194.011(3) and § 194.013(3), F.S. § 194.013(3) provides that failure to pay the filing fee at the time the petition is filed invalidates the petition causing it to be rejected.

Rule 12D-1.004(3) does not deprive a taxpayer of the opportunity for a hearing. It merely creates a reasonable procedure for that hearing: that the assessment cannot be contested *until* a return, *if required,* is filed. While § 200.069(8) requires that a taxpayer be advised of his or her right to a hearing to contest their assessment, it is not inconsistent with the requirement of § 193.052(1)(a) that a tangible personal property tax return "shall be filed," nor with the requirement of RUle 12D-1.004(3), F.A.C., that the return, if required, must be filed before the assessment can be contested. Nor do the penalty provisions of

202

§ 193.972, F.S., override the provisions of § 193.052, F.S., and Rule 12D-1.004(3). Those penalties are not "in lieu" of a return, especially when Rule 12D-1.004(3) provides an opportunity to challenge an assessment before the PAAB by filing a late return.

Assuming that a return is required (the taxpayer has taxable tangible personal property in this state), there is potential for abuse in permitting a taxpayer to use the law to obtain relief, without a requirement that in doing so he or she follow the requirements of the law. Here, those requirements would include § 193.052(1), F.S., and Rule 12D-1.004(3), F.A.C. It should be obvious that without the condition for filing a return, a taxpayer would be in a position to negate the Property Appraiser's estimates, without ever being on record as to his potential tax liability. See *Bystrom v Whitman,* 488 So.2d 520 (Fla. 1986).

The Department's position in this matter is not analytically dissimilar to the position the Supreme Court took in *Bystrom v Whitman,* supra, when it required a taxpayer to turn over its income tax returns, ultimately as a condition to continuing its challenge to a property tax assessment.

In ruling that the amount of the assessment is the core issue in any action challenging a tax assessment, the Court held:

In defending its position both the adverse party and the court are entitled to the whole factual picture. *Orlowitz v Orlowitz,* 199 So.2d 97 (Fla. 1967), citing *Parker v Parker,* 182 So.2d 498 (Fla. 4th DCA 1966). In light of the strong legal presumptions involved, this is particular true in a case of a property appraiser defending a tax assessment. Yet the taxpayers appear to want the best of both worlds, *challenging one portion* of the valuation formula *while unilaterally binding the appraiser on all other matters.* Moreover, the *taxpayers wish to challenge the assessment while preventing the appraiser from obtaining the information needed to defend the assessment. Such a result would be fundamentally unjust.* As this Court stated in *Hagerty v Southern Bell Telephone & Telegraph Co.,* 145 Fla. 51, 55, 199 So. 570, 572 (1940): *"One cannot come into a Court. . .seeking relief and then refuse to answer questions pertaining to the matter about which relief is sought."* (e.s.)

Here, a taxpayer should not be permitted to challenge the appraiser's estimate while unilaterally binding the appraiser to his or her estimate by not filing a return. The law clearly requires the filing of a return, where required, to give the appraiser the information he or she needs to properly administer the law. Contesting an assessment without having to file a return functions to prevent the appraiser from obtain-

**203**

ing information he or she needs to defend the assessment. As the COurt held, this would be fundamentally unjust. Furthermore, with the existence of § 193.052(1), F.S., and Rule 12D-1.004(3), it would be contrary to law. The Department therefore finds that the actions of the Dade County PAAB in permitting challenges to assessments where no return was filed in Exhibit 1 through 10, 12 through 28, 30 through 35, 37 through 42, and 44 constitutes a consistent and continuous violation of the intent of the law and administrative rules pursuant to the provisions of § 194.036(1)(c), F.S.

The Department is aware of case law which holds that the denial of a hearing for failure to file a return can be a violation of a taxpayer's due process. This was best expressed in the case *C.D. Utility Corp. v Maxwell,* 189 So.2d 643 at 647 (Fla. 4th DCA 1966), quoted in *Havill v Gurley,* 382 So.2d 109 at 112 (Fla. 5th DCA 1980), as follows:

> . . . To deny an owner who has failed to file his required tax return the right of having the validity of an assessment judicially or administratively reviewed is to deprive such owner of his property without due process of law and to expose him to the imposition of arbitrary penalties beyond those provided.

However, the above cases did not consider Rule 12D-1.004(3), F.A.c., and as discussed above, the rule does not deny the right to a hearing, it merely provides a reasonable procedure to conduct the hearing in accordance with law which could be accomplished by requiring the return to be filed with the petition.

The need for this is more than evident from a reading of the transcripts summarized in the findings of fact above. Almost uniformly, as a direct result of the failure to file returns, or in the case of Exhibit #38, Signature Gardens, where the return was filed at the hearing (which is a violation of § 194.034(1)(d), see Exhibit B, Petition, requested item #8, appraiser's letter attached hereto), the Special Master conducted appraisals of property based on information the Property Appraiser did not receive or have time to review. The result is a lack of certainty that all taxable property at issue was assessed at just value, and a significant risk that the tax burden was shifted disproportionately to taxpayers who complied with the law by filing completed and accurate returns.

In reviewing the testimony, it is surprising to note how many times established principles of ad valorem tax law are ignored due to lack of information. One typical example is how reductions are based on prior years' assessments with evidence of no change since those years. See *Simpson v Merrill,* 234 So.2d 350 (Fla. 1970). Additionally, by not

204

filing returns (and the transcript reveals many had not filed for years), both the PAAB and the Property Appraiser had to expend significant public funds to conduct field inspections and hearings to discover the information that is required on the return. The record further reveals that many of those hearings were conducted in a manner to preclude the Property Appraiser or the PAAB from verifying that information in a meaningful manner.

The second issue raised in the petition was that the PAAB considered evidence at the hearing that was requested by the Property Appraiser in writing on the petition to be submitted in advance of the hearing, but was not submitted. § 194.034(1)(d) provides:

> (d) Notwithstanding the provisions of this subsection, no petitioner may present for consideration, nor may a board or special master accept for consideration, testimony or other evidentiary materials that were requested of the petitioner in writing by the property appraiser of which the petitioner had knowledge and denied to the property appraiser.

This requirement is clear and unequivocal. On the back of each Dade County PAAB petition is a letter signed by the Property Appraiser requesting detailed information concerning the assessment at issue with a boldface warning that failure to provide the information to the Property Appraiser within a reasonable time prior to the hearing shall prelude the PAAB from consideration the information. The letter is further highlighted at the top with the boldface "NOTE: Important Statutory Requirement" followed by the Property Appraiser's mailing address. As a result of the PAAB considering evidence submitted for the first time at the hearing in Exhibit 1 through 10, 13 and 45, the Department finds that the actions of the Dade County PAAB constitute a consistent and continuous violation of the intent of the law and administrative rules pursuant to the provisions of § 194.036(1)(c).

The Department is aware of the great volume of hearings conducted by the PAAB, the length of time they take and the need for speedy and efficient resolution of tax disputes at the administrative level. It is also aware of the need to insure that all property is assessed at its just value so that the tax burden is fairly distributed. The requirements that a completed return be filed, that an assessment cannot be challenged until a return, if required, is filed, and that evidence denied to the Property Appraiser cannot be considered at the PAAB hearing all serve the same purpose: to permit the Property Appraiser to perform his constitutional duty to assess all property at just value. Conducting hearings in disregard of these provisions subverts this purpose and

**205**

results in an unfair system of taxation. The purpose of the PAAB is to review assessments, not render them. When the Property Appraiser is prevented from performing his constitutional duties by action or in action of the taxpayer, the PAAB should take affirmative action, consistent with law, to require compliance with the law by the taxpayer prior to conducting the hearing so as to permit the Property Appraiser's meaningful participation in the process, including receiving and being able to review information he was entitled to by law in determining the assessed value of the property. When a return is not filed, especially in a large and complex county, the Property Appraiser is forced to estimate. When that estimate is cast aside and replaced by another based on information which was withheld from the Property Appraiser, or submitted in a manner, as in Petition #38, with no opportunity for review, it can not be fairly said that the Property Appraiser had an opportunity to perform his constitutional duties with respect to the subject properties. In this regard, the Property Appraiser's third assertion, that he has been denied due process in a consistent and continuous manner in contravention of Article I, Section 9 of the Florida Constitution is evidence and to the extent the Department of Revenue is empowered to find as such, it so finds.

Wherefore, based on the foregoing, the Department finds consistent and continuous violations of the law and administrative rules by the Dade County PAAB in its decisions reviewed above and appended hereto as Exhibit C. The Dade County Property Appraiser, Joel W. Robbins, is herewith authorized to file suit in Dade County Circuit Court seeking injunctive relief against the Dade County PAAB in relation to the petitions considered herein.

DONE AND ORDERED this 15th day of June, 1990.